UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SUNFLOWER SPA LLC and
LULU ENTERPRISES LLC,

        Plaintiffs,

   v.                                                Case No. 14-C-861

CITY OF APPLETON,

        Defendant.

**DECISION AND ORDER**

In this action the Plaintiffs, Sunflower Spa LLC and Lulu Enterprises LLC, allege that on May 23, 2013, the City of Appleton's water main erupted and spewed some 360,000 gallons of water on the Plaintiffs' property, causing significant damage. Plaintiffs allege that this event constituted a taking, without just compensation, in violation of the state and federal constitutions. They also allege state law claims based on condemnation and nuisance. The Defendant has moved for summary judgment. For the reasons given below, the motion will be granted. The federal constitutional claim will be dismissed with prejudice, and the remaining state law claims will be dismissed without prejudice.

**I. Analysis**

The Defendants' motion is premised largely on the fact that it did not intend to have the water main break on the Plaintiffs' property. When governmental action accidentally results in damage to a citizen's property, it is not a "taking" under the Fifth Amendment. "Accidental injuries

are not takings." *Lucien v. Johnson,* 61 F.3d 573, 576 (7th Cir. 1995).

Plaintiffs counter that there were some 650 water main breaks over an eight-year period, demonstrating the city's apparent policy of not maintaining its pipes. In essence, the city "allowed" its water main to burst, which suffices to constitute a taking.

Plaintiffs rely largely on *Arkansas Game & Fish Comm'n v. United States,* 133 S. Ct. 511, 515, (2012), which made clear that a takings claim could be viable even if the property damage was only temporary. It's true that *Arkansas Game* did not place a categorical bar on such claims, which means there is nothing dispositive about the fact that the water main break was an isolated occurrence. But that case said nothing about the key question at issue here, which is whether the government's action was the product of intent, or whether it was merely a run-of-the-mill accident. In *Arkansas Game*, it was undisputed that the U.S. Army Corps of Engineers "*authorized* flooding that extended into the peak growing season for timber on forest land owned and managed by petitioner, Arkansas Game and Fish Commission." *Id.* (italics added). Similarly, one of the cases the court relied upon involved a claim where "the Wisconsin Legislature had authorized the defendant to build a dam which led to the creation of a lake, permanently submerging the plaintiff's land." *Pumpelly v. Green Bay Co.,* 13 Wall. 166, 20 L.Ed. 557 (1872). These are clearly acts of intent and authorization. The Defendant's position in this case is that the water main break was a simple accident. The City certainly did not "authorize" the break or direct that it occur in any way. As such, *Arkansas Game* does not help the Plaintiffs on that score.

The question is whether government inaction—e.g., deferred maintenance—can rise to the level of intent required to constitute a taking. Following Hurricane Katrina, New Orleans property owners sued the United States alleging that the flood control system was improperly designed and

2

ineffectively maintained, resulting in damage to the plaintiffs' properties. *Nicholson v. United States,* 77 Fed. Cl. 605, 611 (2007). "According to the Plaintiffs, the Corps not only built an ineffective system but also knew or should have known of the system's defects and of the probable disaster in the event of a hurricane." *Id.* The Court of Claims found no taking. "Among the hallmarks of a Fifth Amendment taking is that the governmental conduct forming the basis of the taking is authorized and legitimate. . . . Unauthorized or tortious conduct is not compensable under the Fifth Amendment." *Id.* at 614.

Addressing the claim at great length, the *Nicholson* court found many reasons the takings claim must fail. Among these were the absence of any affirmative act on the government's part. The Plaintiffs alleged that "the decision not to rebuild and/or replace the levee system to withstand a Category 5 hurricane" gave rise to their Constitutional claim. *Id.* at 619. "This particular allegation . . . still does not allege an action on part of the Government capable of taking property. In no case that we know of has a governmental agency's failure to act or to perform its duties correctly been ruled a taking." *Id.* at 620. "Under the decisions controlling this Court, omissions or claims that the Government should have done more to protect the public do not form the basis of a valid takings claim. This is so even if, as the Plaintiffs suggest, the Government suspected that the floodwall system might not withstand the storm surge associated with a hurricane of equal magnitude to Katrina." *Id.* at 621.

Here, the allegation is nearly identical. The Plaintiffs allege that the City of Appleton failed to replace the water main in order to withstand normal water pressure, and its failure to do so constituted the taking. But failing to replace or repair water mains is not government action. The Wisconsin Court of Appeals addressed a similar claim arising out of the flooding of Lake Delton.

3

The Plaintiff alleged that the "Village learned well in advance of the flooding event that the lowest point on the dam was at a higher elevation than [his] property; [and] the Village 'acted' by deciding not to take steps or by avoiding necessary steps to prevent the flooding event based on its knowledge of this difference in elevation." *Fromm v. Vill. of Lake Delton,* 2014 WI App 47, ¶ 21, 354 Wis. 2d 30, 42, 847 N.W.2d 845, 851 (Wis. Ct. App. 2014). In essence, the argument was that the Village "acted" by choosing not to take additional steps to prevent damage. The court rejected this argument, finding that government *action* was required in any takings claim: "We are not free to disregard this plainly stated rule and search for inaction that might be considered to be the functional equivalent of action, as might be at issue for example in the negligence context." *Id.* at ¶ 32, 354 Wis. 2d at 47, 847 N.W.2d at 853.

At its core the Plaintiff's allegations suggest the City was simply negligent in failing to properly maintain its water mains. Taking their allegations as true, one would conclude that the damage they sustained was a foreseeable consequence of the City's inaction. But foreseeability—a classic negligence standard—is a far cry from intent or authorization. In 2013, it must be noted, the vast majority of water mains in Appleton did *not* break and cause damage. Instead, what happened to the Plaintiffs was an unlucky (if foreseeable), but it was an event far from a certainty. "The fact that something could or might happen never ipso facto rises to the level of conduct compensable under the Fifth Amendment." Jed Michael Silversmith, *Takings, Torts & Turmoil: Reviewing the Authority Requirement of the Just Compensation Clause,* 19 UCLA J. Envtl. L. & Pol'y 359, 383 (2002). Events that the government might have prevented, but did not, do not constitute compensable takings under the Fifth Amendment. Accordingly, the federal constitutional claim will be dismissed. The Seventh Circuit has instructed that "it is the well-established law of

this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999). This is perhaps particularly true when the issues involve local governance, as they do here. Accordingly, the supplemental state law claims will be dismissed without prejudice.

**II. Conclusion**

For the reasons given above, the motion for summary judgment is **GRANTED**. The federal takings claim is **DISMISSED** with prejudice. The remaining claims are dismissed without prejudice.

**SO ORDERED** this 14th day of July, 2015.

       /s William C. Griesbach
       William C. Griesbach
       United States District Judge

5

Case 1:14-cv-00861-WCG    Filed 07/14/15    Page 5 of 5    Document 18